I'd like to reserve two minutes for rebuttal, if I may. You can spot your time. Good morning, Your Honors. My name is Tyler Ferkens, and I represent the plaintiff, Manuel Hidalgo, in this case. This is an appeal from a jury trial, which was presided over by Judge Robert Whaley in the district court. The sides had largely resolved the jury instructions on the Friday before the case was submitted to the jury. However, this Court's decisions in the Cunningham and the Gosvick opinions were released late that Friday. On Monday morning, when we returned to court, Judge Whaley presented jury instruction 11A to the sides, at which point in time the plaintiff strongly objected to the giving of jury instructions. And this appeal is primarily premised on our objection to jury instruction 11A, which we believe is in direct contradiction to this Court's opinion in Devereaux. This case really decides whether there is going to be a constriction of this Court's decision in Devereaux. Insofar as the Devereaux case provides that a defendant is liable for a due process violation, if the defendant used investigatory techniques that were so coercive and abusive that they knew or should have known that the techniques would yield false information, what the Court did was add an additional requirement, and that is that you have to prove something more than that. And that is where the Court committed error. This – the argument can basically be boiled down to three different arguments. One, the jury instruction is wrong because it ignores the fact that evidence is looked at in the totality of circumstances that the evidence is presented. So that when the Court presented half of the plaintiff's evidence, half of the plaintiff's evidence, when taken together, can equal a due process claim, and the Court, by listing the plaintiff's evidence, told the jury that it could not. The second issue, Your Honors, is whether the jury instruction is misleading because it leaves the jury to guess at what the term without more means. In that regard, the jury has nothing in the jury instructions that were given to them to tell them what that more means, other than the argument of counsel, which the Court instructs the jury is just argument of counsel and should be ignored. Finally, the jury instruction is problematic insofar as it comments on the evidence, and it comments on the evidence in a way that it is a one-sided comment on the evidence, by listing only the plaintiff's evidence and only the plaintiff's evidence. It does not then go on and marshal the plaintiff's evidence, the plaintiff's evidence, and say, this evidence of the plaintiff, however, does constitute or may constitute a due process claim. So let me begin by talking about the totality of the circumstances. As Your Honors know, a plaintiff's case is built much like a brick house, brick by brick, piece of evidence by piece of evidence. If you take one brick and you pull it aside, it certainly doesn't look like a house, just like if you take one independent piece of evidence, pull it aside, and say, well, that's not a due process violation. It's only in the totality of the circumstances that a plaintiff has a claim under the due process claim. And if we look at this jury instruction, the Court has to ask, if a plaintiff proves each one of these things, that all of those things occurred in one particular case, does he have a claim? And I submit to the Court that he must. As an example, if you read jury instruction 11a, which is at page 39 of the Plaintiff's Clause, that's the evidence of the rest of the record, number 5 that the Court has listed is, using overbearing or suggestive tactics in interviewing children does not constitute a due process claim. Well, those words, I would submit, are almost identical to the words that this Court has said do constitute a due process claim. If you – the words coercive and abusive are very similar, if not identical in meaning, to overbearing and suggestive. But here the Court says that that's not a claim, and you should not consider that as a due process claim unless you consider that the plaintiff has something more without, of course, telling the jury what that more might be. The Court also says that you are not to consider as a due process claim that an interviewer disbelieved in initial denial and continued with the aggressive questioning when coupled with, number 2, that repeated admonitions to be truthful are also used. So in other words, where an interviewer comes into an interview, as we proved, and knows that the child is truthfully saying that nothing happened, but continues with aggressive interviews against that child, in this case, Donna Everett, telling her to be truthful, in other words, translate that to say, I need a different statement from you, until she makes that different statement, that, too – Let me ask you a question. If the jury had thought that the interrogator knew a statement was false, wouldn't the jury's instructions have permitted liability, then? No, I don't think they would have, Your Honor. In other words – I thought there was an instruction that covered the general rule in Devereaux about manufacturing and obliverate falsehoods. That's not in the exact language, but – That is not the jury instruction that lists the elements. This is just another jury instruction explaining the law, which, when read with – in conjunction with jury instruction 11a, tells the jury that they can't consider all of these things, that these things do not equate to a due process claim. And they're basically telling the jury to ignore each of these proofs that the plaintiff has proved in the case without more, without ever telling the jury, what is this without more, without more what? Without more evidence, without more evidence that Don and Melinda testified that they lied under oath at trial? Well, we proved that, but the jury doesn't know that that's the more that we need to prove. They don't understand that they can look at these seven bits of evidence that the jury has instructed them on, that you are not to consider, and that they can consider those under the totality of the circumstances. If we add up each of those seven things and we look at the individual pieces of proof that the jury was going through, and they start – the jury starts comparing those pieces of proof to these various categories that the court has instructed them on, the jury simply is instructed to discount this piece of evidence, this piece of evidence, and this piece of evidence. And in the end, the plaintiff is left with, if anything, half a house by the court's jury instruction. Furthermore, courts should instruct juries on what the claim is, not on what the claim isn't. In this particular case, the court is saying, here's what the plaintiff's case isn't. Well, Mr. Hidago went to court to prove to the jury what his case was. And it's unfair for the court to say, this is not your case, when, in fact, it is his case. And if proving all these things can equal a due process claim, and if the court rules that all of these things that are listed here cannot equal a due process claim, then this Court would be changing the rule that came from Deborah, because – and I think it's important for this Court to understand where this language without more came from. It came from the Deborah decision, which was written by one member of this Court, at page 1075, where the Court was talking about evidence that Mr. Deborah had provided on summary judgment. And the Court says, consequently, mere allegation that defendant used interviewing techniques that were in some sense improper or that violated State regulations without more cannot serve as the basis for a claim under 1983. Well, what the Court is very clearly saying there is that, Mr. Deborah, you can't prove a negligent investigation claim and call it a 1983 claim. And that's not what we were proving in this case. We were not proving a negligence case against Detective Perez. Rather, what we were proving was the prong that the Court went on to say, that he used techniques that were so coercive and abusive that he knew that they would yield false evidence. So we were not given the opportunity to prove that case. Instead, our case was – we were deprived of that opportunity by the judge's jury instruction. Thank you. What would you say is – I mean, is there an instruction that you – that you thought covered the substance of your case? Yes, Your Honor. We proposed a jury instruction. If you look at page 67 of the excerpts of record, which is basically what I call the two-convict jury instruction, in that jury instruction, we included the element or claim, what the judge calls claim two, so that the first element was the acts or omissions of the defendant were intentional or deliberately indifferent. Then the second part would be that the defendant used investigative techniques that were so coercive and abusive that he knew or was deliberately indifferent that those techniques would yield false information. The third element was the defendant acted under color of law. And the fourth element that we proposed was that the acts or omissions of the defendant were the cause of the deprivation. That is a very simple two-convict standard that also then goes on to define deliberate indifference. And I think that's the proper jury instruction. And that was close to, basically, the jury instructions that we had until Monday morning, when suddenly the Court is instructing the jury to ignore half of the plaintiff's evidence. I don't know if time is up, but may I ask one question? Mr. Frickin, you still have pending a motion for certification. Are you still pressing that motion in light of the State Court of Appeals' recent decision in the Goldsvig v. Abbey? I am, and thank you for reminding that, Your Honor. We have filed a petition for review of the Goldsvig v. Abbey decision. My question is, are you still pressing your motion here? Yes. For certification. Yes, because we believe the Court will accept review of the Goldsvig case and that these cases should be decided together. Well, if you get your review granted, won't that answer your question? It will answer our question unless this Court dismisses all of Mr. Hidalgo's State law claims before then, Your Honor. Okay. Thank you. Thank you. Okay, Mr. McMahon. Good morning, Your Honor. May it please the Court, Patrick McMahon representing Defendant Robert Perez. Somewhere in the course of your argument, would you please point us or point me to the jury instruction that you think fairly presented the plaintiff's theory of their case? I will, Your Honor. I think jury instruction number 13 properly laid out the statement of what the Devereaux standard is, and then I believe I don't have the full excerpt of the record in front of me, but the jury instruction that elicits what the three manners of proof would be correctly stated to the jury, what they needed to prove, or what they needed to consider in order to find that there was a 14th Amendment due process violation. The key, though, on instruction 11A, which counsel hasn't addressed to this Court, is it's an abusive discretion standard. And what Judge Whaley did, each of the members of this distinguished panel have had the opportunity to delve into the Devereaux case at some stage over the past few years. Judge Whaley had the opportunity of being the district court judge in the Devereaux case that eventually came to the Ninth Circuit, which is now referred to oftentimes as the Devereaux standard. Judge Whaley painstakingly went over the evidence that was submitted in this trial. And it's our position that plaintiff was attempting to prove his case by propensity evidence, by putting on evidence of all these children in a two-year investigation involving Detective Perez, saying this was bad, this was bad, this was bad. And over objection, the judge let that in under his discretion, under 404B, to prove intent or one of the other exceptions under 404B. But that the problem with that is those specific interview techniques that were carefully listed in the Devereaux decision, and then two or three that were added in the Gosvick and Cunningham decision, were essentially all the evidence that was relied on by the plaintiff in that case. That created the Court's dilemma to say, and it's not a comment on the evidence, but to correctly guide the jury to say, all of those interview techniques do not form the basis that the Constitution of the United States is violated under the Due Process Clause. So that's not a comment on the evidence. It's simply informing the jury that that standing alone without more, which is the language of this circuit, does not prove a constitutional violation. Now, I strongly disagree with counsel's position that if you take all of those interview techniques and put three or four together or put all of them together, that that, in combination, creates a due process violation. If that were the case, the Devereaux case would have distinctly said that, because all of the interview techniques complained of were, in fact, present in the Devereaux decision, and yet this Court has still said, resoundingly, in Cunningham, Gosvick, and Devereaux, that those without more do not establish a due process violation. Now, when you look at a case on jury instructions, you look at the totality of the law and the totality of the evidence to see whether each side to the litigation had a fair and full opportunity to present their side of the case. And this, I think, Justice Gould, answers the question you posited to me. When counsel was able to say, the more that we have in this case that potentially establishes a due process violation, he was referring to two witnesses, Donna and Mary, that said, above and beyond interview techniques, these girls made a claim, which was disputed, that they were somehow physically influenced or physically coerced in making a false allegation or fabricating evidence that was used to prosecute the plaintiff in the criminal matter. That evidence was argued to the jury by counsel. That's the more he told the jury that he needed to prove that this was a due process violation. The jury heard that, heard those witnesses testify, and they flatly rejected the argument. They didn't believe the witnesses. That's the only assumption you can make because the jury came back unanimous that he did not violate Mr. Hidalgo's due process rights. So when that's all taken together, he had a full and fair opportunity to argue his position. And the argument is changing a little bit here now for oral argument. But there never was a proposed instruction as to define what more was. The more was self-evident based on those two witnesses, Donna and Melinda Everett, that those interview techniques don't form a due process violation. But here, the allegations were Detective Perez went one step further and actually physically coerced these girls into making disclosures that they were sexually abused by the plaintiff. That was the more he had the opportunity to argue that. He did argue it both in the opening closing and rebuttal closing argument. And he did present that evidence. So it clearly wasn't an abuse of discretion by Judge Whaley to give that instruction on 11A. And as far as commenting on the evidence, I attempted to put excerpts of what the judge said during the colloquy on jury instructions in my briefing. And the judge did specifically address the issue, whether he was commenting on the evidence. And as this court is well aware, unlike state court, a district court judge is entitled to comment on the evidence. And then the standard is whether it was an abuse of discretion and how the judge commented on that particular evidence. Judge Whaley, in this case, did not unduly marshal or comment on the evidence in a way that was prejudicial or detrimental to Mr. Hidalgo at the time of trial. Your Honor, I want to address briefly the certification issue. We did submit, and Your Honor, I believe you brought that up. We did submit to the court that there are two decisions that this court was provided by my office with supplemental authority on the certification issue and why that motion should be denied. The first was the Gosvick decision at 392 F3rd 1006 that was moved to be published. And I believe, Judge Gould, you were on that panel as well. And in there, the court, this circuit, did affirm the underlying Gosvick decision where the Washington State statute of limitations was decided by the Eastern District of Washington court, and this Ninth Circuit did affirm the analysis pertaining to the statute of limitations. The basis for certification under Washington law is there has to be some showing that the federal court is not equipped or it's a unique state law question that only the State Supreme Court could handle. I think the Gosvick decision that was published by this circuit clearly establishes that this court is well-equipped to handle the statute of limitations issue, in fact, has done so, and the motion for certification should be denied. Subsequent to that decision, I submitted to the court the Division II Court of Appeals decision in Gosvick wherein the exact same statute of limitations issues has been decided by the Division II Court of Appeals in the state of Washington. And so that decision should be binding precedent on this court because this court has to apply, obviously, Washington law under the statute of limitations. So I would respectfully request that the court deny that statute of limitations certification to the State Supreme Court. Do I understand this correctly? The decision of the Court of Appeals Division II is in line with the same views that were expressed by us in Gosvick? Yes, Your Honor. In Gosvick II, in the second Gosvick. It's virtually identical as far as determining when the statute of limitations accrues, when the tolling statute applies, and when you have notice and when you apply. And that's the opinion that Mr. Forkens is seeking, petitioning the State Supreme Court to review? From the Division II decision. My understanding is I wasn't a party to that case. However, I did move the court for publication so that we could present it to the court today, which was granted. It's my understanding that he has petitioned the State Supreme Court to accept review of that, and it's my understanding that the State of Washington, who is the other party in that litigation, will oppose that. Okay. Well, that's pending. And in the normal course for the State Supreme Court, what would be the timing for it to act on a petition, if you know? That's the toughest question for any lawyer all day, Your Honor. My educated guess would probably be a year to a year and a half down the road. Okay. Thank you. And, Your Honor, I don't believe I need to, unless the court requests me to do so, address the issues regarding qualified immunity for cheap badgering. Those were addressed in oral argument, but I believe they're adequately and thoroughly briefed by the parties. Any questions? There are no questions. Thank you, Your Honor. Thank you. Mr. Firkins, I think your time was up, but we will give you one minute for rebuttal. Thank you. I have one minute. But don't go beyond one minute, please. Thank you, Your Honor. Basically, I want to say that the difference between a judge commenting on the evidence in this case is that the judge didn't comment on the evidence. He wrote a comment on the evidence and called it a jury instruction. And that's dramatically different than a court commenting on the evidence inadvertently during a case and the question whether that prejudice is the plaintiff. So I would note that that's dramatically different than a simple comment on the evidence. And I was left with the burden of trying to define to the jury what, without more means, even though without more is not the law, as this Court has enunciated in Debra. Thank you. Okay. Thank you, Mr. Firkins and Mr. McMahon. We now have two distinguished lawyers to argue the next case for us, Mr. McMahon and Mr. Firkins. So, yes, I'll go with that. So we appreciate your being with us.
judges: Fernandez, Tashima, Gould